## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| The Evergy Companies, | ) | |
| *Petitioners*, | ) | |
| | ) | |
| v. | ) | No. 22-1221 |
| | ) | |
| Federal Energy Regulatory Commission | ) | |
| *Respondent*. | ) | |

**PETITION FOR REVIEW OF THE EVERGY COMPANIES**

Pursuant to Section 313(b) of the Federal Power Act (FPA), 16 U.S.C. § 825*l*(b), Federal Rule of Appellate Procedure 15, and D.C. Circuit Rule 15, Evergy Kansas Central, Inc., Evergy Metro, Inc., and Evergy Missouri West, Inc. (collectively, the Evergy Companies) hereby petition this Court for review of the following Federal Energy Regulatory Commission (FERC or Commission) order: *Southwest Power Pool, Inc.*, 179 FERC ¶ 61,229 (June 28, 2022). A copy of the order is appended as Attachment A.

The FERC proceeding at issue concerns tariff revisions filed by Southwest Power Pool, Inc. (SPP), under FPA section 205, 16 U.S.C. § 824d. The Evergy Companies timely protested SPP's filing on May 20, 2022. After the Commission issued its June 28, 2022 Order accepting SPP's tariff revisions, the Evergy Companies timely sought rehearing on July 22, 2022. More than thirty days have passed since the Evergy Companies filed their request for rehearing, meaning it is deemed denied under FPA section 313(a).

This Petition is timely and venue in this Court is proper under FPA section 313(b).  Should the Commission subsequently issue an order addressing arguments raised on rehearing, the Evergy Companies will move the Court for leave to amend this Petition.

Respectfully submitted,

*/s/ John Lee Shepherd, Jr.*

| | |
|---|---|
| C. Dixon Wallace III | John Lee Shepherd, Jr. |
| Hunton Andrews Kurth LLP | *Counsel of Record* |
| 951 East Byrd Street | Hunton Andrews Kurth LLP |
| Richmond, VA 23219 | 2200 Pennsylvania Avenue, NW |
| (804) 344-7955 | Washington, D.C. 20037 |
| dwallace@huntonak.com | (202) 419-2135 |
| | jshepherd@huntonak.com |

*Counsel for the Evergy Companies*

Dated:  August 25, 2022

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| The Evergy Companies, | ) | |
| *Petitioners*, | ) | |
| | ) | |
| v. | ) | No. 22-1221 |
| | ) | |
| Federal Energy Regulatory Commission | ) | |
| *Respondent*. | ) | |

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Evergy Kansas Central, Inc., Evergy Metro, Inc., and Evergy Missouri West, Inc. (collectively, the Evergy Companies) state the following:

The Evergy Companies are all wholly-owned subsidiaries of Evergy, Inc., a publicly-traded company.  At present, no publicly-traded company owns more than 10 percent of Evergy, Inc.

Respectfully submitted,

/s/ John Lee Shepherd, Jr.

C. Dixon Wallace III
Hunton Andrews Kurth LLP
951 East Byrd Street
Richmond, VA 23219
(804) 344-7955
dwallace@huntonak.com

John Lee Shepherd, Jr.
*Counsel of Record*
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037
(202) 419-2135
jshepherd@huntonak.com

*Counsel for the Evergy Companies*

Dated:  August 25, 2022

# Attachment A

179 FERC ¶ 61,229
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Richard Glick, Chairman;
James P. Danly, Allison Clements,
Mark C. Christie, and Willie L. Phillips.

| | |
|---|---|
| Southwest Power Pool, Inc. | Docket No.  ER22-1719-000 |

ORDER ACCEPTING TARIFF REVISIONS

(Issued June 28, 2022)

1.      On April 29, 2022, pursuant to section 205 of the Federal Power Act (FPA)[1] and section 35.13 of the Commission's regulations,[2] Southwest Power Pool, Inc. (SPP) submitted proposed revisions to its Open Access Transmission Tariff (Tariff) to establish an annual process for each transmission pricing zone to develop a single set of uniform planning criteria, called Zonal Planning Criteria,[3] that SPP would use to evaluate the need for Zonal Reliability Upgrades[4] in SPP's regional transmission planning process.  As discussed below, we accept SPP's proposed Tariff revisions effective June 29, 2022, as requested.

---

[1] 16 U.S.C. § 824d.

[2] 18 C.F.R. § 35.13 (2021).

[3] As proposed, Zonal Planning Criteria are the set of measuring systems and performance standards used to assess the actual or projected ability of the transmission system to deliver power to load reliably.  Zonal Planning Criteria would be used in SPP's regional transmission planning process to evaluate the need for Zonal Reliability Upgrades, in lieu of SPP's current use of each transmission owner's local planning criteria.

[4] SPP proposes to define Zonal Reliability Upgrades as "[t]hose upgrades included in and constructed pursuant to the SPP Transmission Expansion Plan in order to ensure the reliability of the Transmission System identified because of application of Zonal Planning Criteria.  Zonal Planning Criteria for Zone 10 shall be subject to Attachment AD of the Tariff."  SPP, Proposed OATT, Sixth Revised Volume No. 1, part I, § 1 (Definitions XYZ) (2.0.0).

Document Accession #: 20220628-3057          Filed Date: 06/28/2022

## I.   **Background**

2.      The SPP footprint is divided into 18 transmission pricing zones, 10 of which include multiple transmission owners.  Currently, SPP's regional transmission planning process requires that each transmission owner submit its local planning criteria to SPP, which SPP then uses in its regional transmission planning process to determine whether a potential reliability violation that requires a new Zonal Reliability Upgrade should be considered.  Zonal Reliability Upgrades are planned pursuant to SPP's regional transmission planning process but are identified based on potential reliability violations driven by an individual transmission owner's local planning criteria.[5]  Each transmission owner that is part of a zone that contains multiple transmission owners can submit its own local planning criteria to SPP for use in identifying Zonal Reliability Upgrades.  The costs of a Zonal Reliability Upgrade that result from the application of an individual transmission owner's local planning criteria are allocated to all load in the zone in which the transmission owner is located on a load ratio share basis.  As a result, in multi-transmission owner zones, all load in the zone pays for the cost of a Zonal Reliability Upgrade even if the Zonal Reliability Upgrade is only needed to address one transmission owner's local planning criteria.

3.      In 2020, SPP proposed tariff revisions to establish a process for developing uniform Zonal Planning Criteria in each zone, which SPP would use to evaluate the need for Zonal Reliability Upgrades.[6]  Under the 2020 Proposal, the network customer with the largest total network load in a zone would designate a transmission owner within the zone as the Facilitating Transmission Owner.  The Facilitating Transmission Owner would have had sole authority to develop the single set of Zonal Planning Criteria that would apply to the entire zone.  The Facilitating Transmission Owner would have been required to hold at least one open meeting with transmission owners and customers in the zone to discuss the development of the Zonal Planning Criteria.  The Facilitating Transmission Owner would have been required to provide Zonal Planning Criteria to SPP annually, if Zonal Planning Criteria were developed.  However, if the Facilitating Transmission Owner did not provide Zonal Planning Criteria to SPP, then SPP would use its regional planning criteria[7] for the zone.

---

[5] SPP, OATT, Sixth Revised Volume No. 1, attach. O, § II (6.0.0), § II.5.iv.

[6] SPP, Filing, Docket No. ER20-2334-000 (filed July 7, 2020) (2020 Proposal).

[7] SPP's regional planning criteria comply with North American Electric Reliability Corporation (NERC) Reliability Standards and include additional requirements.  SPP's currently effective tariff requires local planning criteria that, at a minimum, conform to the SPP regional planning criteria.

4.      The Commission rejected the 2020 Proposal.[8]  The Commission found that, in zones with multiple transmission owners, SPP's proposal would give an undue preference to the network customer with the largest total network load in the zone as well as to the Facilitating Transmission Owner in the zone, because the Facilitating Transmission Owner would have the authority to unilaterally establish Zonal Planning Criteria for the zone and could potentially select criteria that address its own local reliability needs and foreclose consideration of the local reliability needs of other transmission owners in the zone.[9]  For similar reasons, the Commission found that SPP's proposal was unduly discriminatory against other transmission customers and owners in the zone because (1) the Facilitating Transmission Owner could potentially prevent the local reliability needs of other transmission owners from being considered; (2) the other transmission customers and owners would not have any formal process rights; and (3) SPP did not propose to take a role in ensuring that their input was considered in developing the criteria.[10]  Additionally, the Commission stated that it was unclear whether a transmission owner would be able to continue to use separate local transmission planning criteria in its local transmission planning process (i.e., outside of SPP's regional transmission planning process).[11]

## II.      SPP Filing

5.      In the instant filing, SPP proposes a process for developing uniform Zonal Planning Criteria, which SPP has revised in response to the Commission's findings in the 2020 Order.  SPP proposes to establish an annual process that each zone must use to develop a single set of Zonal Planning Criteria.[12]

6.      Under the proposed process, a Facilitating Transmission Owner in each zone will be responsible for facilitating the development of one set Zonal Planning Criteria for that zone.[13]  As in the 2020 Proposal, SPP proposes that the network customer with the largest

---

[8] *Sw. Power Pool, Inc.*, 172 FERC ¶ 61,202 (2020) (2020 Order).

[9] *Id.* P 40.

[10] *Id.* P 41.

[11] *Id.* P 42.

[12] SPP Filing at 6-7.

[13] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.a.

total network load in the zone each year will designate the Facilitating Transmission Owner for that zone.[14]

7.      Under the annual process, transmission owners and customers that receive Long-Term Service[15] to serve load within the zone may submit proposed Zonal Planning Criteria to the Facilitating Transmission Owner by May 1 of each year.[16]  Then, by June 1, the Facilitating Transmission Owner must post to its Open-Access Same-Time Information System (OASIS) its proposed draft Zonal Planning Criteria, along with all proposed Zonal Planning Criteria that it received.[17]  All interested parties then will have 30 days to submit written comments to the Facilitating Transmission Owner, and the Facilitating Transmission Owner must post the comments to its OASIS within a week of receiving such comments.[18]  After considering all the proposed draft Zonal Planning Criteria and the written comments, the Facilitating Transmission Owner must post the final draft Zonal Planning Criteria to its OASIS by August 1.[19]  All interested parties will then have 30 days to submit comments on the final draft Zonal Planning Criteria.[20]  By October 1, the Facilitating Transmission Owner must coordinate with the transmission owners and customers in the zone to set and notice a date and time for an open meeting.[21]

---

[14] SPP Filing at 11; SPP, Proposed OATT, Sixth Revised Volume No. 1, § 1 (Definitions F) (4.0.0).

[15] The SPP Tariff defines Long-Term Service as "Long-Term Firm Point-To-Point Transmission Service or Network Integration Transmission Service of one year or longer."  SPP, OATT, Sixth Revised Volume No. 1, § 1 (Definitions L) (1.0.0).

[16] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.a.i.

[17] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.a.ii.

[18] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.a.iii.

[19] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.a.iv.

[20] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.a.v.

[21] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.a.vi.

Document Accession #: 20220628-3057    Filed Date: 06/28/2022

The Facilitating Transmission Owner must hold at least one open meeting each year to discuss the development of the Zonal Planning Criteria.[22]  SPP explains that although the proposal only requires the Facilitating Transmission Owner to invite transmission owners and customers that receive Long-Term Service to serve load within the zone to the open meeting, such meetings are open to any entity wishing to discuss the development of the Zonal Planning Criteria.[23]

8.      SPP proposes that the Facilitating Transmission Owner then conduct a two-step voting process to approve the Facilitating Transmission Owner's proposed final draft Zonal Planning Criteria at the required open meeting.[24]  The first step of the voting process requires a load-weighted vote of all transmission customers receiving Long-Term Service to serve load in the zone based on the prior calendar year's 12-month peak load in that zone.[25]  The proposed Zonal Planning Criteria advance to the second step of the voting process if the percentage of the vote to approve is greater than or equal to the largest load in the zone plus one-half of the remaining load in the zone.[26]  Under the second step of the voting process, each transmission owner and customer that receives Long-Term Service to serve load within the zone is allowed one vote.  For situations where an entity is both a transmission owner and customer or there is an affiliate relationship through ownership or contract between any transmission owner or customer in the zone, the entity or affiliated entities are limited to one vote.  The proposed Zonal Planning Criteria are adopted in the second step of the voting process if more than 50% of the transmission owners and transmission customers, taken together, vote to approve.[27]

---

[22] SPP Filing at 12-13, 19; SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.a.

[23] SPP Filing at 12.

[24] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.b.

[25] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.b.i.

[26] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.bii.

[27] SPP Filing at 13, 20.

9.     After the vote at the required open meeting, the Facilitating Transmission Owner must provide SPP with the minutes and reports of the open meetings by March 1.[28]  Any transmission owner or customer in the zone has until March 15 to challenge the tabulation of the Zonal Planning Criteria vote.[29]  A designated senior representative from the Facilitating Transmission Owner and SPP will resolve disputes concerning the vote tabulation as promptly as practicable.[30]  The Facilitating Transmission Owner must provide SPP and the transmission owners and customers in the zone with the approved Zonal Planning Criteria by April 1.[31]  If the Facilitating Transmission Owner does not provide SPP with a set of approved Zonal Planning Criteria by April 1, then SPP will use either the most recently approved Zonal Planning Criteria provided from that zone or, if there is no previously approved Zonal Planning Criteria, SPP's regional planning criteria to assess the need for Zonal Reliability Upgrades.[32]

10.     SPP proposes Tariff language to exempt Zone 19[33] from using the above-described two-step voting process because Zone 19 already has developed a consensus voting process that ensures that the transmission owners and customers within Zone 19 have input into the development of Zonal Planning Criteria.[34]  The Zone 19 voting process includes a single vote made up of two components: the first vote component is for the same eligible transmission customers as the above described two-step voting process based upon weighted load in the zone and the second vote component is for transmission

---

[28] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.c.

[29] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.d.

[30] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.d.i.

[31] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.e.

[32] SPP Filing at 13-14, 20-21.

[33] As part of the integration of the Western Area Power Administration – Upper Great Plains region, Basin Electric Power Cooperative, and Heartland Consumers Power District into SPP, SPP established a new SPP pricing zone, Zone 19.  *Sw. Power Pool, Inc.*, 149 FERC ¶ 61,113 (2014).

[34] The Zone 19 voting process is included as part of SPP's proposed tariff revisions.  SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.b.iii.

Document Accession #: 20220628-3057          Filed Date: 06/28/2022

owners in the zone based upon gross zonal annual transmission revenue requirement.[35]
The threshold for adopting the Zonal Planning Criteria in the Zone 19 voting process is
75% of the single vote and no single entity can account for over 33% of the weighted
vote relating to either vote component.[36]  SPP explains that the proposed exemption
would only apply so long as Zone 19 continues to use its preexisting consensus voting
process.  SPP also explains that any other zone may propose a voting process to be
exempt from the proposed Zonal Planning Criteria process, similar to Zone 19, by
requesting a proposed revision to the tariff, which would be reviewed through the SPP
stakeholder process and ultimately filed with the Commission.[37]

11.     SPP asserts that its proposal will "eliminate the confusion and the potential
inequities" resulting from multiple sets of local planning criteria in a zone being used in
the regional transmission planning process.[38]  SPP states that, under the current process, a
zone that has multiple transmission owners can have multiple and different sets of
applicable local planning criteria for the zone.  SPP asserts that a transmission owner may
establish local planning criteria that would result in a Zonal Reliability Upgrade that
disproportionately benefits a portion of the load in the zone at the expense of all load in
the zone, given that the cost of Zonal Reliability Upgrades are allocated on a load ratio
share basis to all customers in the zone.[39]  SPP also states that the current process is
unduly discriminatory as it does not allow those entities paying for upgrades the ability to
affect the development of those criteria.[40]  SPP argues that the proposed process treats all
transmission customers in the same zone comparably and allows any interested entity to
comment on and participate in the development of Zonal Planning Criteria.[41]  SPP argues
that its proposal ensures collaboration among transmission owners and fair allocation of
upgrade costs within the zone.[42]

---

[35] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), §
II.5.b.iii.1.

[36] *Id.*

[37] SPP Filing at 15-16, 20.

[38] *Id.* at 17.

[39] *Id.* at 10.

[40] *Id.* at 11.

[41] *Id.*

[42] *Id.* at 10, 16.

12.     SPP maintains that its proposal does not preclude individual transmission owners from applying their own local planning criteria in their local transmission planning processes to meet individual needs. SPP proposes Tariff language clarifying that transmission owners may continue to use their own local planning criteria or Commission-approved local planning criteria to identify system upgrades outside of SPP's regional transmission planning process.[43] However, the cost of transmission facilities that the transmission owner identifies to address its individual local planning criteria would be allocated solely to that transmission owner's load within the zone.[44]

## III.     Notice and Responsive Pleadings

13.     Notice of SPP's filing was published in the *Federal Register*, 87 Fed. Reg. 26,753 (May 5, 2022), with interventions and protests due on or before May 20, 2022.

14.     The following entities filed timely motions to intervene: Ameren Services Company, on behalf of its affiliates, Ameren Transmission Company of Illinois, Ameren Illinois Company, and Union Electric Company; American Electric Power Service Corporation, on behalf of its affiliates, Public Service Company of Oklahoma, Southwestern Electric Power Company, AEP Oklahoma Transmission Company, Inc., and AEP Southwestern Transmission Company, Inc. (collectively, AEP); Basin Electric Power Cooperative; City Utilities of Springfield, Missouri (CUS); East River Electric Power Cooperative, Inc.; East Texas Electric Cooperative, Inc. (ETEC) and its generation and transmission cooperative member, Northeast Texas Electric Cooperative, Inc. (NTEC); Evergy Kansas Central, Inc., Evergy Metro, Inc., and Evergy Missouri West, Inc. (subsidiaries of Evergy, Inc. and, collectively, the Evergy Companies); Golden Spread Electric Cooperative, Inc. (Golden Spread); GridLiance High Plains LLC (GridLiance); Independence Power & Light, City of Independence, Missouri (Independence); ITC Great Plains, LLC (ITC Great Plains); Kansas City, Kansas Board of Public Utilities (Kansas City BPU); Kansas Electric Power Cooperative, Inc. (KEPCo); Kansas Municipal Energy Agency (KMEA); Kansas Power Pool (KPP); Missouri Joint Municipal Electric Utility Commission (MJMEUC); Municipal Energy Agency of Nebraska (MEAN); Oklahoma Gas & Electric Company (OG&E); Oklahoma Municipal Power Authority (OMPA); People's Electric Cooperative; Southwest Transmission, LLC; Sunflower Electric Power Corporation; Western Area Power Administration (WAPA); Western Farmers Electric Cooperative (WFEC); and Xcel Energy Services Inc. (Xcel), on behalf of its affiliate, Southwestern Public Service Company (SPS).

---

[43] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.j.

[44] SPP Filing at 10-11.

15.    OG&E, GridLiance, and the Indicated SPP Transmission Owners (Indicated SPP TOs)[45] filed protests.

16.    Joint Commenters[46] and WAPA filed comments in support.

17.    On June 6, 2022, SPP and Joint Commenters[47] filed answers in response to the protests.  On June 8, 2022, Xcel filed an answer in response to GridLiance's protest.  On June 14, 2022, Indicated SPP TOs filed an answer in response to SPP's and Joint Commenters' answers.  On June 15, 2022, AEP filed an answer in response to protesters.  On June 17, 2022, OG&E filed an answer in response to SPP's and Joint Commenters' answers.

## A.    **Protests and Comments**

18.    OG&E, GridLiance, and Indicated SPP TOs oppose SPP's proposal.  GridLiance states that SPP's proposal still contains problems that the Commission identified in the 2020 Order by being preferential to the Facilitating Transmission Owner and the largest load in a zone and discriminatory to all other non-affiliated transmission owners and customers.  GridLiance asserts that other transmission owners in the zone have no recourse if the Facilitating Transmission Owner "decides to block the submittal of zonal criteria."[48]  GridLiance further argues that, even though SPP asserts that its proposal does not preclude individual transmission owners from applying their own local planning criteria in their local transmission planning processes to meet individual needs, SPP's proposed Tariff language would replace a transmission owner's local planning criteria and require the transmission owner to apply the Zonal Planning Criteria.  GridLiance states that the Commission has already determined the language to be unclear and yet the instant proposal does not revise the Tariff language from the 2020 Proposal.[49]

19.    OG&E and Indicated SPP TOs argue that SPP's proposal imposes significant administrative burdens on Facilitating Transmission Owners.  Indicated SPP TOs assert that the proposal establishes rigid and arbitrary dates for Facilitating Transmission

---

[45] Indicated SPP TOs are the Evergy Companies and ITC Great Plains.

[46] Joint Commenters are CUS; ETEC; Golden Spread; Independence; Kansas City BPU; KEPCo; KMEA; KPP; MJMEUC; MEAN; NTEC; OMPA; WFEC; and Xcel, on behalf of SPS.

[47] The answer filed by Joint Commenters did not include Xcel.

[48] GridLiance Protest at 10-11, 16.

[49] *Id.* at 10-11, 19-20.

Owners to complete the Zonal Planning Criteria development process and to submit the applicable criteria to SPP; that Facilitating Transmission Owners are required to accomplish these tasks without any help, input, or oversight from SPP; and that these uncompensated compliance obligations emphasize the unjust and unreasonable nature of the proposal.[50]  According to OG&E, a single transmission customer could block any proposed Zonal Planning Criteria, even if such criteria were supported by all other transmission owners and transmission customers in the zone.[51]

20.     OG&E and Indicated SPP TOs contend that SPP's proposed two-step voting process would result in gridlock.  OG&E and Indicated SPP TOs argue that the two-step voting process gives small transmission customers the ability to veto proposed Zonal Planning Criteria, even where an overwhelming majority of the load in a given zone is served by a single, large transmission customer.[52]  OG&E and Indicated SPP TOs argue that such a veto ability contradicts the Commission's recent order in *Public Service Electric and Gas Company*,[53] where, according to OG&E, "the Commission upheld tariff revisions proposed by PJM which revised a two-step stakeholder voting process . . . to reduce the chance that smaller transmission owners could veto changes to the tariff supported by the transmission owners that own the majority of transmission assets."[54] OG&E asserts, moreover, that the right to exercise this veto power would come into play after the Facilitating Transmission Owner has spent nearly a year developing Zonal Planning Criteria with extensive opportunity for input and participation from other stakeholders.[55]

21.     GridLiance argues that there is no actual requirement that the Facilitating Transmission Owner submit Zonal Planning Criteria to SPP for inclusion in its regional transmission planning process and that, as such, "the largest load can unilaterally choose that no local planning will be performed through SPP's process in a given zone."[56] Further, GridLiance states that a transmission owner in the Facilitating Transmission

---

[50] Indicated SPP TOs Protest at 23-24.

[51] OG&E Protest at 10-11.

[52] *Id.*; Indicated SPP TOs Protest at 19-20.

[53] 179 FERC ¶ 61,001 (2022) (*PSEG*).

[54] OG&E Protest at 12; Indicated SPP TOs Protest at 22-23.

[55] OG&E Protest at 11.

[56] GridLiance Protest at 10.

Owner's zone has no recourse if the Facilitating Transmission Owner decides to block the submission of Zonal Planning Criteria to SPP via its effective veto authority.[57]

22.     OG&E and Indicated SPP TOs assert that SPP's proposal represents unequal treatment of Zone 19.  OG&E contends that SPP does not explain why the procedures to be applied in Zone 19 cannot be replicated in other zones or why it is just and reasonable for Zonal Planning Criteria to be approved in Zone 19 with 75% support while the same criteria require 95% support to be approved in Zone 7, the OG&E zone.[58]  Indicated SPP TOs argue that SPP's proposal is unduly discriminatory with respect to entities that are outside of Zone 19, and that the proposal carves out an exception to the process for developing Zonal Planning Criteria for Zone 19.  Indicated SPP TOs also recognize that, although SPP commits to allowing other zones to develop similar zone-specific processes like Zone 19, SPP also proposes to force the approach described in its proposal on those zones in the meantime.[59]

23.     Indicated SPP TOs and GridLiance argue that SPP's proposal requires no oversight from SPP in the Zonal Planning Criteria process.  Indicated SPP TOs assert that SPP's obligation is to oversee and facilitate the Zonal Planning Criteria processes to ensure that the most suitable projects move forward in that process.  Indicated SPP TOs further assert that the proposal abdicates SPP's planning responsibilities, which conflicts with its status as an RTO under Order Nos. 1000[60] and 2000.[61]  Specifically, Indicated SPP TOs argue that SPP's proposal contradicts Order No. 1000's requirement that "each public utility transmission provider participate in a regional transmission planning

---

[57] *Id.* at 10-11.

[58] OG&E Protest at 11 n.28.

[59] Indicated SPP TOs Protest at 24-25.

[60] *Transmission Plan. & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 FERC ¶ 61,051 (2011), *order on reh'g*, Order No. 1000-A, 139 FERC ¶ 61,132, *order on reh'g and clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (2012), *aff'd sub nom. S.C. Pub. Serv. Auth.* v. *FERC*, 762 F.3d 41 (D.C. Cir. 2014).

[61] *Reg'l Transmission Orgs.*, Order No. 2000, FERC Stats. & Regs. ¶ 31,089 (1999) (cross-referenced at 89 FERC ¶ 61,285), *order on reh'g*, Order No. 2000-A, FERC Stats. & Regs. ¶ 31,092 (2000) (cross-referenced at 90 FERC ¶ 61,201), *aff'd sub nom. Pub. Util. Dist. No. 1 of Snohomish Cty. v. FERC*, 272 F.3d 607 (D.C. Cir. 2001).

process,"[62] including a requirement that they "evaluate, in consultation with stakeholders, alternative transmission solutions that might meet the needs of the transmission planning region more efficiently or cost-effectively than solutions identified by individual public utility transmission providers in their local transmission planning process."[63]  Indicated SPP TOs also argue that the proposal unfairly places ultimate responsibility for the development of Zonal Planning Criteria on the Facilitating Transmission Owner.[64]

24.     OG&E and GridLiance allege that SPP's proposal would result in inefficient, duplicative transmission planning and that individual transmission owners are in a better position than Facilitating Transmission Owners to identify necessary criteria.[65]  OG&E contends that the default to the generic SPP regional planning criteria, rather than criteria developed by the transmission owners in the relevant zone (which have been crafted to address the unique circumstances present in the zone), will serve no parties' interests. OG&E asserts that it has important expertise on its own system's needs, experience based on its status as the transmission owner with the largest investment in the zone and its status as the largest transmission customer, and that OG&E's established planning criteria are better suited than the SPP regional planning criteria to determine the reliability needs within the OG&E zone, Zone 7.[66]

25.     Indicated SPP TOs argue that, if no Zonal Planning Criteria are ever established in a zone, cost allocation of transmission upgrades would be made with no regard for the benefits they provide to other transmission customers in the zone, and that requiring a transmission owner to bear the full cost of a transmission upgrade would "shift a grossly disproportionate share" of such costs on the transmission owner that constructs the transmission upgrade, and therefore involves "a wholesale departure from the cost-causation principle."[67]  Indicated SPP TOs contend that, furthermore, even if Zonal Planning Criteria were adopted in a given zone, the proposal gives even small transmission customers the ability to veto the zonal cost allocation for any project

---

[62] Indicated SPP TOs Protest at 18 (quoting Order No. 1000, 136 FERC ¶ 61,051 at P 146).

[63] *Id.* at 16 (quoting Order No. 1000, 136 FERC ¶ 61,051 at P 148).

[64] GridLiance Protest at 1, 21; Indicated SPP TOs Protest at 17-18.

[65] OG&E Protest at 15; GridLiance Protest at 15-16.

[66] OG&E Protest at 15.

[67] Indicated SPP TOs Protest at 11-12 (quoting *Old Dominion Elec. Coop. v. FERC*, 898 F.3d 1254, at 1261 (D.C. Cir. 2018) (*ODEC*)).

constructed pursuant to those standards.[68]  GridLiance argues that excluding reliability
projects that are identified based on a transmission owner's local planning criteria from
zonal cost allocation is inconsistent with the Commission's cost allocation principles.[69]

26.     Indicated SPP TOs assert that the proposal will undermine reliability and subject
transmission owners and transmission operators in SPP to substantial NERC compliance
risks.  Indicated SPP TOs argue that the proposal would create financial disincentives for
transmission owners to construct local transmission upgrades that benefit their zones as a
whole, because the transmission owners that construct local transmission projects—and,
subject to regulatory approvals, their customers—will pay the full cost of the upgrades.[70]
Further, Indicated SPP TOs allege that multiple NERC reliability standards and
requirements are addressed through the local planning criteria but that the proposal will
result in the SPP Planning Criteria being used instead of those local planning criteria in
zones that are unable to adopt Zonal Planning Criteria.  Thus, Indicated SPP TOs argue
that, because the SPP Planning Criteria do not establish the same reliability practices as
the existing local criteria, the ability to ensure compliance with applicable reliability
requirements could become challenging.[71]

27.     GridLiance argues that SPP's assertion concerning the ability of individual
transmission owners to develop and use their own local planning criteria in their
applicable local transmission planning process ignores the revision to section II.5.h of
Attachment O, which acts to replace a transmission owner's local criteria and requires the
transmission owner to apply the Zonal Planning Criteria created by the Facilitating
Transmission Owner.  GridLiance states that, in fact, the Commission has already
determined the exact language of proposed Section II.5.h to be unclear yet the proposal
does not revise this conflicting Tariff language from the 2020 Proposal.  GridLiance
argues that it would be challenging, if not impossible, to implement a
Commission-approved local transmission planning process while applying criteria
created by a competing transmission owner—in this case, the Facilitating Transmission
Owner.[72]

28.     In contrast, Joint Commenters assert in their supporting comments that SPP's
proposal resolves the Commission's previously identified deficiencies regarding undue

---

[68] Indicated SPP TOs Protest at 11-12.

[69] GridLiance Protest at 14-15.

[70] Indicated SPP TOs Protest at 13.

[71] *Id.* at 14.

[72] GridLiance Protest at 19-20.

discrimination in a balanced manner. Joint Commenters contend that the two-step voting process ensures that one single entity cannot override and disregard the interests of all minority load-serving interests. According to Joint Commenters, for regional transmission planning purposes, projects identified through a transmission owner's local transmission planning process and whose costs are directly assigned still flow into SPP's regional transmission planning process, such that SPP is able to optimize its planning and avoid redundant or uneconomic solutions. Further, Joint Commenters support the ability for zones to adopt their own consensus voting process that is more stringent than SPP's proposed Zonal Planning Criteria process, including the initial exemption of Zone 19.[73]

29.    In its supporting comments, WAPA states that the direct assignment of costs for transmission projects identified exclusively through local planning criteria and not due to the approved Zonal Planning Criteria or the SPP regional transmission planning process is non-discriminatory because all transmission owners are treated comparably. WAPA states that Zone 19 has established uniform Zonal Planning Criteria for the past three years and supports allowing Zone 19 to continue to use its preexisting consensus voting process because it meets the key requirements of the two-step voting process and is just and reasonable and not unduly discriminatory.[74]

## B.    **Answers**

30.    SPP reiterates that its proposal does not eliminate individual local planning criteria or Commission-approved local planning criteria. SPP contends that if those entities in one zone that will be allocated costs for a Zonal Reliability Upgrade cannot develop consensus-based local planning criteria that are appropriate for all entities in their zone, it is not appropriate to force all entities, who may not be in the same unique situation as another entity, to pay for the costs of upgrades. SPP asserts that in such cases where there are no consensus Zonal Planning Criteria, an entity in a zone will be allowed to continue to use its own planning criteria or Commission-approved local planning criteria to plan for its own unique local needs but may not be able to collect the cost of the resulting upgrades from all entities in a zone because that zone has not arrived at a consensus regarding what Zonal Planning Criteria should be adopted.[75]

31.    SPP argues that the two-step voting process provides a non-discriminatory process to approve Zonal Planning Criteria. SPP alleges that its proposal ensures that all transmission owners and transmission customers that receive Long-Term Service to serve load within a zone have an opportunity to vote to approve or not approve any

---

[73] Joint Commenters Comments at 6-9.

[74] WAPA Comments at 5-6.

[75] SPP Answer at 6-7.

Document Accession #: 20220628-3057    Filed Date: 06/28/2022

Zonal Planning Criteria that could ultimately cause costs to be incurred by those entities. According to SPP, no single entity will be able to force any particular Zonal Planning Criteria on another without a consensus among those entities in the zone.[76]

32.    SPP argues that the Facilitating Transmission Owner is not given undue preference under the proposed Zonal Planning Criteria process.  SPP argues that while the Facilitating Transmission Owner has specific obligations under the proposed Zonal Planning Criteria process, none of those obligations gives it ultimate rights to approve or deny any Zonal Planning Criteria.  SPP states that the Facilitating Transmission Owner, as a transmission owner, will have the same rights to approve Zonal Planning Criteria as any other transmission owner through the two-step voting process.[77]

33.    SPP argues that the proposed Zonal Planning Criteria process allows for input from all interested parties and is not unduly burdensome to the Facilitating Transmission Owner.  SPP asserts that the proposal affords every interested party in a zone, not just the Facilitating Transmission Owner, numerous opportunities to participate in the development and approval of any Zonal Planning Criteria that are used by SPP in its regional transmission planning process.  Further, SPP states that the Facilitating Transmission Owner is simply responsible for coordinating an annual open meeting to discuss draft proposals for Zonal Planning Criteria after it has posted a draft proposal of Zonal Planning Criteria, comments on that proposal, a final draft proposal, and a meeting notice.[78]  According to SPP, the process is not unduly burdensome to the Facilitating Transmission Owner in the creation of a Zonal Planning Criteria process that is open and transparent to all parties, but the Facilitating Transmission Owner, as the largest network customer in its zone, could designate another Transmission Owner in its zone to take on the duties as the Facilitating Transmission Owner, if it desires.[79]

34.    SPP alleges that the proposed Zonal Planning Criteria process solves an identified problem within the SPP regional transmission planning process.  SPP asserts that its proposal would improve its regional transmission planning process by changing how local planning criteria are submitted to SPP for considering Zonal Reliability Upgrades to ensure that all entities have input into the development of uniform Zonal Planning Criteria.  SPP states that the current process could be unduly discriminatory as it does not

---

[76] *Id.* at 10-11.

[77] *Id.* at 12-13.

[78] *Id.* at 15-16.

[79] *Id.* at 16.

allow those entities paying for upgrades the ability to affect the development of those criteria.[80]

35.     SPP argues that its proposal does not allow SPP to abdicate its regional transmission planning responsibilities as an RTO.  SPP states that the proposed revisions do not change any of SPP's regional transmission planning processes relating to local transmission planning activities that the Commission previously approved as being compliant with Order No. 890.[81]

36.     SPP asserts that the Zonal Planning Criteria process appropriately exempts Zone 19 from the two-step voting process.  SPP contends that Zone 19 has already developed a consensus voting process that ensures that transmission owners and transmission customers have input in the development of the Zonal Planning Criteria for Zone 19 and that all input is considered during the review of the proposed Zonal Planning Criteria for Zone 19.  SPP notes that even though Zone 19 is the only zone exempted from the two-step process at this time, any other zone has the ability to propose a voting process to be exempt from the two-step voting process as a revision to the Tariff, but at this time no other zone has created such a voting process.[82]

37.     Joint Commenters assert that SPP's proposal is a compromise that balances the interests of large and small transmission owners.  Joint Commenters argue that protesters are motivated by self-interest because they are dominant transmission owners in their multi-transmission owner zones and stand to benefit by preserving a process that gives them the greatest ability to socialize costs.  Joint Commenters disagree with the proposition that adoption of SPP's proposal could prevent a project from being constructed, reasoning that a transmission owner still can accept a direct assignment of project cost.  Joint Commenters contest the argument that SPP's proposal will create issues with NERC Reliability Standards because the Zonal Planning Criteria do not relieve transmission owners of NERC obligations.[83]

38.     Xcel states that SPP's proposal will reduce disputes by incentivizing the development of shared planning criteria, thereby minimizing the circumstances in which customers complain about overbuilt facilities of one utility for which cost allocation to all

---

[80] *Id.* at 13-14.

[81] *Id.* at 16-19.

[82] *Id.* at 19-20.

[83] Joint Commenters Answer at 4, 9.

customers within the zone would violate the cost causation principle.[84]  Further, Xcel argues that GridLiance mischaracterizes SPP's proposal by insisting that it would force a transmission owner to accept new local planning criteria developed under the new process.[85]  Xcel states that, on the contrary, SPP's proposal reserves the right for a transmission owner to use its original local transmission planning process, and that in such cases the resulting facilities may not be eligible for zonal cost allocation, which is an essential safeguard against cost shifts resulting from transmission facilities built to a specific utility's more stringent criteria that could otherwise be allocated throughout the zone.  Xcel asserts that GridLiance opposes SPP's proposal because it could impact GridLiance's business model to overbuild transmission facilities and socialize the cost of those investments to other utilities in the zone.[86]

39.    Indicated SPP TOs repeat their arguments that SPP's proposal:  (1) impedes the development of needed network upgrades and violates the cost causation principle; (2) undermines reliability and subjects transmission owners and operators to substantial NERC compliance risks; (3) undermines the Commission's policy goals set forth in Order Nos. 890 and 1000; (4) abdicates SPP from its planning responsibilities; (5) contains an inequitable voting structure that imposes significant compliance burdens on Facilitating Transmission Owners; (6) treats Zone 19 in a discriminatory manner; (7) does not demonstrate that SPP's existing Tariff is unjust, unreasonable, or unduly discriminatory; and (8) should not be given deference because of stakeholder support.[87]

40.    AEP states that it supports SPP's proposal, asserting that it improves transparency, coordination and information exchange requirements, and is consistent with Order No. 890.  AEP contends that SPP's proposal retains the ability for transmission owners to develop their own local planning criteria and will not adversely impact reliability.[88]

41.    OG&E argues that SPP has not addressed the issues raised in the 2020 Order or explained why the additional burdens on transmission owners and other parties are necessary.  OG&E contends that SPP's response that OG&E can designate another

---

[84] Xcel Answer at 2 (citing *Nat'l Ass'n of Regulatory Util. Comm'rs v. FERC*, 475 F.3d 1277, 1285 (D.C. Cir. 2007); *K N Energy, Inc. v. FERC*, 968 F.2d 1295, 1300 (D.C. Cir. 1992); *ODEC*, 898 F.3d 1254 at 1255 (quoting *BNP Paribas Energy Trading GP v. FERC*, 743 F.3d 264, 268 (D.C. Cir. 2014))).

[85] *Id.* at 2-3 (citing GridLiance Protest at 31).

[86] *Id.* at 2-4.

[87] Indicated SPP TOs Answer at 4-20.

[88] AEP Answer at 2.

transmission owner to be the Facilitating Transmission Owner does not address OG&E's unreasonable burden concerns.[89]  OG&E asserts that SPP's proposal gives disproportionate input to transmission owners and transmission customers that have a relatively small stake in a zone, which creates incentives for brinkmanship and possible deadlock, including the possibility of unfair cost shifting.[90]  OG&E argues that if no Zonal Planning Criteria are adopted, a transmission owner would have to bear the full cost of an upgrade if it does not satisfy the SPP regional transmission planning criteria, even though others in the zone would benefit.[91]

## IV.  Discussion

### A.  Procedural Issues

42.  Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2021), the timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.

43.  Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.213(a)(2) (2021), prohibits an answer to a protest or answer unless otherwise ordered by the decisional authority.  We accept the answers filed in this proceeding because they have provided information that assisted us in our decision-making process.

### B.  Substantive Issues

44.  As discussed further below, we accept SPP's proposed Tariff revisions because we find that SPP has shown that the proposed Tariff revisions are just and reasonable and not unduly discriminatory or preferential.

45.  We find that the proposed process will allow for the collaborative development of Zonal Planning Criteria in multi-transmission owner zones that will then be used to determine the need for Zonal Reliability Upgrades.  As described by SPP, its current process for identifying Zonal Reliability Upgrades could lead to confusion and potential inequities because zones with multiple transmission owners can have multiple sets of local planning criteria for the same zone that are then used to identify Zonal Reliability Upgrades.  We find that SPP's proposal will address such concerns in a just and

---

[89] OG&E Answer at 5 (citing SPP Answer at 16).

[90] *Id.* at 6-7.

[91] *Id.* at 8.

reasonable manner through the proposed Zonal Planning Criteria voting process, as described further below.

46.     We disagree with Indicated SPP TOs and GridLiance that SPP's proposal represents an abdication of its responsibilities as an RTO.  In the 2020 Order, the Commission rejected SPP's proposal because SPP did not propose to take a role in ensuring that the input of other transmission owners and customers in the zone would be taken into consideration.[92]  We find that SPP's proposal here addresses the Commission's concern because it establishes a defined process by which transmission owners and transmission customers in the zone can provide input on potential Zonal Planning Criteria, as well as comment and ultimately vote on draft Zonal Planning Criteria developed by the Facilitating Transmission Owner.  As such, SPP's proposed Zonal Planning Criteria process provides for meaningful opportunities for input from interested stakeholders.

47.     Further, we find Indicated SPP TOs' protest regarding Order No. 2000 inapposite.  Order No. 2000 required that each "RTO must have ultimate responsibility for both transmission planning and expansion within its region that will enable it to provide efficient, reliable and non-discriminatory service and coordinate such efforts with the appropriate state authorities."[93]   The instant filing does not change the structure of SPP's regional transmission planning process, wherein SPP will use the submitted Zonal Planning Criteria to identify transmission needs and develop potential Zonal Reliability Upgrades, as well as solicit potential Zonal Reliability Upgrades addressing those needs from stakeholders.[94]

48.     We disagree with Indicated SPP TOs' argument that SPP's proposal violates the requirements of Order No. 1000 because SPP will not facilitate or oversee the development of Zonal Planning Criteria.[95]  The only Order No. 1000 requirement that Indicated SPP TOs point to is the requirement for public utility transmission providers to participate in a regional transmission planning process.  We find that SPP's proposal does not change its existing participation in a regional transmission planning process.  With regard to Indicated SPP TOs' argument that SPP's proposal undermines the Commission's transmission planning policy goals established in Order Nos. 890 and

---

[92] 2020 Order, 172 FERC ¶ 61,202 at P 41.

[93] Order No. 2000, FERC Stats. & Regs. ¶ 31,089 at 31,163.

[94] SPP, OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § III.2.b; SPP, OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § III.7.f.

[95] Indicated SPP TOs Protest at 18.

Document Accession #: 20220628-3057          Filed Date: 06/28/2022

1000,[96] Indicated SPP TOs do not identify requirements in those orders that the proposal allegedly violates. We disagree that the proposal is unjust and unreasonable because it would narrow the scope of local planning in SPP and lead to less efficient or cost-effective transmission solutions, as Indicated SPP TOs argue.[97] Transmission owners will continue to be able to use local planning criteria to identify local reliability needs, and SPP's regional transmission planning process will, among other things, continue to check to identify possible regional transmission solutions that may meet local transmission needs more efficiently or cost-effectively. And contrary to Indicated SPP TOs' suggestion that SPP's proposal will reduce coordinated planning,[98] the proposal will establish a process that will require increased coordination among transmission owners in the development of Zonal Planning Criteria.

49.     We also disagree with GridLiance's contention that SPP's proposal would constitute a regional transmission planning process supplanting a local one. SPP's proposed Tariff language expressly preserves the ability of transmission owners to identify system upgrades outside of SPP's regional transmission planning process and have the costs of such upgrades directly assigned to them. SPP's proposed Tariff language states that "Transmission Owners may continue to utilize their own company-specific or their own FERC-approved local planning process to identify system upgrades" and that "[a]ny cost associated with a system upgrade exclusively identified as needed through a Transmission Owner's local planning process or FERC-approved local planning process, and not identified through the Transmission Provider's regional planning process . . . shall be direct assigned to the identifying Transmission Owner."[99] As further clarified by SPP in its answer, transmission owners may use criteria differing from Zonal Planning Criteria to identify those upgrades.

50.     We also find unpersuasive GridLiance's and OG&E's arguments that SPP's proposal would result in inefficient transmission planning. These arguments assume that a particular zone will not adopt Zonal Planning Criteria that include or at least consider the planning criteria that a particular transmission owner wishes to use. While SPP's proposed process does not guarantee any specific outcome, it does provide, as noted above, that all transmission owners in a zone have an avenue to advocate for the inclusion of their preferred transmission planning criteria in the Zonal Planning Criteria. Even if the eventual Zonal Planning Criteria adopted through the two-step voting process do not

---

[96] *Id.* at 15-17.

[97] *Id*. at 17.

[98] *See id*. at 15-17.

[99] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.j.

include a transmission owner's preferred transmission planning criteria, transmission owners may still use their local planning criteria to identify system upgrades, whose cost will be directly assigned to that transmission owner and its transmission customers.

51.    We find that SPP's proposed two-step voting mechanism is just and reasonable and not unduly discriminatory or preferential.  We find that the voting mechanism resolves the concerns outlined in the 2020 Order regarding the Facilitating Transmission Owner's potential to (1) select Zonal Planning Criteria that address only its own local reliability needs (and have the cost of resulting Zonal Reliability Upgrades allocated to all customers in the zone) or (2) foreclose SPP's consideration of local reliability needs of other transmission owners in the zone when identifying the need for Zonal Reliability Upgrades and prevent Zonal Reliability Upgrades from being constructed in response to those needs, because the Facilitating Transmission Owner does not have unilateral authority to establish Zonal Planning Criteria, and because the second step of the voting process requires that a majority of the transmission customers and transmission owners in the zone taken together agree to the Zonal Planning Criteria.[100]

52.    We disagree with the assertion made by Indicated SPP TOs, GridLiance, and OG&E that the proposed two-step voting mechanism is inequitable because either the Facilitating Transmission Owner or a small transmission customer can effectively veto the adoption of Zonal Planning Criteria.  Specifically, we find that Indicated SPP TOs' and OG&E's reliance on *PSEG* is misplaced.  In *PSEG*, the Commission accepted revisions to the PJM Consolidated Transmission Owners Agreement (CTOA) to modify the voting structure to better align with economic stakes and to prevent relatively small transmission owners from blocking filings supported by those with substantial interest in a situation where an extremely high percentage was necessary for a vote to prevail.[101]  There, the PJM CTOA addressed the ability to submit an FPA section 205 filing, whereas here, SPP's proposal concerns the adoption of Zonal Planning Criteria.[102]  Moreover, the Commission's conclusion in *PSEG* that a less-strict voting structure was just and reasonable does not necessarily preclude stricter voting structures.  Although the Commission found in *PSEG* that "the proposed revisions rebalance the CTOA voting rules to better align with individual PJM Transmission Owners' economic stakes in the transmission system" and that weighted voting "is a well-accepted method of reflecting parties' relative interests,"[103] those findings in the PJM CTOA context did not determine

---

[100] 2020 Order, 172 FERC ¶ 61,202 at PP 40-41.

[101] *PSEG*, 179 FERC ¶ 61,001.

[102] *Id.* P 2.

[103] *Id.* P 30.

that a voting structure allowing smaller entities to cast a deciding vote is de facto unjust and unreasonable.

53.     Additionally, we disagree with arguments raised by Indicated SPP TOs, GridLiance, and OG&E that SPP's proposed two-step voting mechanism is inconsistent with Order No. 890. In requiring public utility transmission providers to revise their tariffs to include a formal local transmission planning process, the Commission in Order No. 890 required public utility transmission providers to allow customers (and other stakeholders) to participate fully in local transmission planning processes based on transmission planning principles including openness, transparency, and coordination.[104] However, the Commission also stated that, "[i]n response to the suggestion by some commenters that we require transmission providers to allow customers to collaboratively develop transmission plans with transmission providers on a co-equal basis, we clarify that transmission planning is the tariff obligation of each transmission provider" and that "the ultimate responsibility for planning remains with transmission providers."[105] Here, ultimate responsibility for transmission planning remains with SPP and the transmission owners. Each transmission owner in a multi-transmission owner zone retains the right under the SPP Tariff to establish its own local planning criteria and to develop and pay for any local transmission facilities that it believes are needed to address transmission needs driven by those criteria. SPP's proposal also ensures that planning for Zonal Reliability Upgrades is carried out in a coordinated, open, and transparent manner, and provides for timely and meaningful input and participation of transmission customers.

54.     We find that OG&E's and Indicated SPP TOs' concerns regarding the exemption of Zone 19 from the two-step voting process are unsupported. As SPP asserts, other zones may request proposed Tariff revisions to implement a voting process exempt from the Zonal Planning Criteria process similar to Zone 19.[106] Further, Zone 19's voting process—which predates SPP's filing—ensures that the transmission owners and transmission customers have input in the development of the Zonal Planning Criteria for

---

[104] *Preventing Undue Discrimination & Preference in Transmission Serv.*, Order No. 890, 118 FERC ¶ 61,119, at P 435, *order on reh'g*, Order No. 890-A, 121 FERC ¶ 61,297 (2007), *order on reh'g*, Order No. 890-B, 123 FERC ¶ 61,299 (2008), *order on reh'g*, Order No. 890-C, 126 FERC ¶ 61,228, *order on clarification*, Order No. 890-D, 129 FERC ¶ 61,126 (2009).

[105] *Id.* P 454; *see also GridLiance High Plains LLC*, 174 FERC ¶ 61,078, at PP 44-46 (2021) (discussing Commission precedent on the roles of transmission providers and customers in transmission planning).

[106] SPP Filing at 16.

Zone 19 and that all input is considered during the review of the proposed Zonal Planning Criteria, similar to SPP's two-step voting process.

55.     We find SPP's proposal to use its regional planning criteria to assess the need for Zonal Reliability Upgrades if no Zonal Planning Criteria have been adopted in a particular zone to be just and reasonable.  If no Zonal Planning Criteria have been adopted, then there will be no zonal cost allocation for transmission facilities that address individual transmission owner local planning criteria if those facilities are not also needed to address zonal transmission needs driven by SPP's regional planning criteria.  In the absence of Zonal Planning Criteria, we anticipate that SPP's planning criteria will appropriately identify the transmission facilities that confer reliability benefits on multiple transmission owners or transmission customers in the relevant zone because the criteria are consistent with NERC reliability standards and additional requirements adopted by SPP.  Further, SPP states that it evaluates all transmission facilities identified as needed exclusively through local planning criteria to determine if a more comprehensive regional transmission facility can also address the reliability needs, economic needs, and needs driven by Public Policy Requirements identified in its regional transmission planning process.[107]

56.     Indicated SPP TOs and GridLiance cite to the D.C. Circuit's *ODEC* decision to argue that SPP's proposal would violate the cost-causation principle.[108]  But in *ODEC*, the court held "only that FERC did not adequately justify its approval of the amendment at issue[], which prohibited cost sharing for a category of high-voltage projects [that FERC] conceded to have significant regional benefits . . . ."[109]  Here, no evidence has been presented indicating that transmission facilities needed to address only individual transmission owner local planning criteria in a multi-transmission owner zone confer benefits on other transmission owners or other transmission owners' customers in the relevant zone sufficient to support a finding that the costs of such facilities must be allocated zonally.  Therefore, we disagree with Indicated SPP TOs and GridLiance's argument as to cost causation.

57.     We find that SPP's proposal resolves the concerns outlined in the 2020 Order regarding uncertainty as to whether a transmission owner may continue to use separate local transmission planning criteria in its local transmission planning process.  In the 2020 Order, the Commission noted that the Tariff language that SPP then proposed stated that "[a]ll transmission owners within the Zone shall apply the Zonal Planning Criteria comparably to all load in the applicable Zone" and removed existing references to local

---

[107] *Id.* at 14-15.

[108] Indicated SPP TOs Protest at 12; GridLiance Protest at 14-15.

[109] *ODEC*, 898 F.3d 1254 at 1263.

Document Accession #: 20220628-3057     Filed Date: 06/28/2022

planning criteria and local planning processes.[110]  Although SPP's current proposal would retain this language, it also would add Section II(5)(j) to Attachment O, which states, in part, that, "Transmission Owners may continue to utilize their own company-specific local planning process or their own FERC-approved local planning process to identify system upgrades (i.e., outside of SPP's regional planning process)."[111]  We find that the addition of proposed Section II(5)(j) to Attachment O clarifies that a transmission owner may continue to use separate local transmission planning criteria in its local transmission planning process and does not require transmission owners to use Zonal Planning Criteria for all purposes.

58.     Regarding OG&E's and Indicated SPP TOs' arguments concerning potential administrative burden placed on the Facilitating Transmission Owner, we acknowledge that the proposed process would add to the administrative burden of the Facilitating Transmission Owner.  We find, however, given the need to ensure participation and transparency, it is reasonable for Facilitating Transmission Owners, which we expect will usually be the transmission owner with the largest load in the zone, to take the lead in facilitating the process for developing Zonal Planning Criteria.

The Commission orders:

        SPP's proposed Tariff revisions are hereby accepted, as discussed in the body of this order, effective June 29, 2022, as requested.

By the Commission.

( S E A L )

                                        Kimberly D. Bose,
                                        Secretary.

---

[110] 2020 Order, 172 FERC ¶ 61,202 at P 42.

[111] SPP, Proposed OATT, Sixth Revised Volume No. 1, attach. O, § II (8.0.0), § II.5.j.

Document Accession #: 20220628-3057     Filed Date: 06/28/2022

Document Content(s)

ER22-1719-000.docx.....................................................1

## CERTIFICATE OF SERVICE

I certify that on August 25, 2022, I caused the foregoing documents to be served on the Federal Energy Regulatory Commission and also on all parties in the underlying agency proceeding through the Commission's electronic filing system.

*/s/ John Lee Shepherd, Jr.*
John Lee Shepherd, Jr.
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037
Tel: (202) 955-1500
Fax: (202) 778-2201
jshepherd@huntonak.com
